Marcus W. RANKIN, Plaintiff–Appellant,

v.

Wayne HOWARD and Jane Doe Howard, his wife; Joseph Alexander, Sr. and Esther Alexander, his wife et al., Defendants–Appellees.

No. 78–3216.

United States Court of Appeals, Ninth Circuit.

Argued Sept. 8, 1980.

Submitted Sept. 22, 1980.

Decided Dec. 5, 1980.

Peter D. Baird, Lewis & Roca, Phoenix, Ariz., for plaintiff–appellant.

Albert R. Vermeire, Phoenix, Ariz., Gilmore F. Diekmann, Jr., Bronson, Bronson & McKinnon, San Francisco, Cal., on brief; Bruce E. Miller, Deputy Atty. Gen., Topeka, Kan., for defendants–appellees.

Before WRIGHT and FERGUSON, Circuit Judges, and BROWN, Senior District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

The parents of 22 year old Marcus Rankin, a member of the Unification Church, sought to have him "deprogrammed."[1] They retained Howard, an Arizona lawyer, to institute a guardianship proceeding.

Howard filed a petition for guardianship with Judge Zeller, a nonlawyer probate judge in Pottawatomie County, Kansas. The petition falsely recited that Rankin was a resident of Pottawatomie County. Actually, he lived in Missouri.

On Christmas 1976, while Rankin was at home in Missouri, guardianship papers were issued *ex parte* by the Kansas judge. Young Rankin was then flown to Kansas in his father's plane for what he thought would be a social visit.

On arrival he was taken into custody and flown to Arizona. There he was confined to a motel room for "deprogramming," in which Trauscht, another lawyer, allegedly participated. He escaped after nine days.

Rankin sued his parents,[2] Judge Zeller, Howard, Trauscht, and others, alleging a conspiracy to deprive him of civil rights in violation of 42 U.S.C. §§ 1983, 1985, and 1986 and common–law torts.

He charged that the judge privately agreed with the others before the petition was filed to order the guardianship, knew that the jurisdictional allegations were fraudulent, and violated a jurisdictional requirement of the Kansas guardianship statute as well as the United States Constitution by failing to give the proposed ward notice or an opportunity to be heard. *See* K.S.A. §§ 59–3012 to –3013 (prior to 1977 amendments); *In re Wellman*, 3 Kan.App. 100, 45 P. 726, 727 (1896).[3]

The district court granted summary judgment for Judge Zeller on all claims, finding him absolutely immune. *Rankin v. Howard*, 457 F.Supp. 70, 73 (D.Ariz.1978). The court granted partial summary judgment for Howard and Trauscht on the § 1983 claim. *Id.* at 74.[4]

Rankin contends that, because Judge Zeller acted nonjudicially and in the clear absence of personal jurisdiction, he lost his judicial immunity.[5] Rankin also asserts error in the holding that the other defendants were insulated from § 1983 liability by derivative immunity.

■ We invited the parties to submit supplemental briefs on the threshold question whether this appeal was interlocutory in view of the fact that the plaintiff's claims under §§ 1985 and 1986 and under state tort law remain to be adjudicated. We now are satisfied that the district court made the required determination in entering final judgments pursuant to Federal

* Of the District of Kansas.

1. Most basic facts are not in dispute. Discovery yielded some conflicting accounts. Whether Judge Zeller agreed in advance to rule favorably on the petition and whether he knew that Rankin was not residing or present in Kansas is unclear.

   In reviewing summary judgments against Rankin, we view the materials "in the light most favorable" to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

2. Rankin has now settled with his parents.

3. The *Wellman* court stated: "Without [notice and a hearing], no citizen would be safe from the machinations of secret tribunals, and the most sane members of the community might be adjudged insane and landed in the madhouse." 45 P. at 727.

4. After the district court granted the summary judgments, the plaintiff filed an amended complaint, which for the first time invoked the court's diversity jurisdiction to present claims based entirely on Kansas law. We do not consider questions raised by the amended complaint.

5. Rankin also contends on appeal that Judge Zeller acted in the absence of subject matter jurisdiction. Zeller was a probate judge, and at the time in question Kansas law granted exclusive jurisdiction of guardianship proceedings to probate judges. K.S.A. § 59–3005 (prior to 1977 amendments). Judge Zeller had at least a semblance of subject matter jurisdiction.

Rule of Civil Procedure 54(b) and that it did not abuse its discretion in doing so.[6]

## I.

We consider first the contention that Judge Zeller lost his immunity by acting nonjudicially and in the clear absence of personal jurisdiction.

In *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 231 (1978), the Supreme Court declared that state judges are immune from § 1983 liability for "judicial" acts not taken "in the 'clear absence of all jurisdiction.'" *Id.* at 357, 98 S.Ct. at 1105 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872)). A state judge who ordered the sterilization of a minor at her mother's request was held immune because the order was a judicial act and no state law clearly excluded petitions for sterilization from the court's subject matter jurisdiction. 435 U.S. at 357, 360, 98 S.Ct. at 1105, 1106.[7]

### A. The Nonjudicial Agreement

The *Stump* Court identified two specific factors to be considered in determining whether an act is "judicial": "the nature of the act itself, *i. e.,* whether it is a function normally performed by a judge, and . . .

6. Pursuant to Rule 54(b), the district court determined that there was no just reason for delay in the entry of final judgment on the claims involved and directed the clerk to enter final judgments.

7. The 5–3 decision has been criticized. *See* Rosenberg, Stump v. Sparkman: *The Doctrine of Judicial Impunity,* 64 Va.L.Rev. 833, 836 (1978) ("*Stump* is a possible invitation to judicial lawlessness").

8. The *Stump* majority emphasized behavioral factors in defining a judicial act. Justice Stewart, in dissent, suggested a purely conceptual approach: "the concept of what is a judicial act must take its content from a consideration of the factors that support immunity from liability for the performance of such an act." 435 U.S. at 368, 98 S.Ct. at 1110.

Although Justice Stewart's approach may not have been adopted by the Court, we do not believe that the majority meant to deny the relevance of the doctrine's purpose in determining its scope.

the expectations of the parties, *i. e.,* whether they dealt with the judge in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 1107. We also consider the underlying purpose of judicial immunity. *Gregory v. Thompson,* 500 F.2d 59, 63 (9th Cir. 1974).[8]

■ Although a party conniving with a judge to predetermine the outcome of a judicial proceeding may deal with him in his "judicial capacity," the other party's expectation, *i. e.,* judicial impartiality, is actively frustrated by the scheme. In any event, the agreement is not "a function normally performed by a judge." It is the antithesis of the "principled and fearless decision-making" that judicial immunity exists to protect. *See Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967); *Gregory v. Thompson,* 500 F.2d at 63.

■ Rankin alleged that Judge Zeller agreed in advance with the others to rule favorably on the petition. We conclude that a judge's private, prior agreement to decide in favor of one party is not a judicial act. *See also Lopez v. Vanderwater,* 620 F.2d 1229, 1235–37 (7th Cir. 1980) (judge not immune for "prosecutorial" acts prior to biased decision).[9] If the alleged agreement

9. In *Sparks v. Duval County Ranch Co., Inc.,* 604 F.2d 976 (5th Cir. 1979) (en banc), *aff'd sub nom. Dennis v. Sparks,* —— U.S. ——, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), the Fifth Circuit held that a judge accused of accepting a bribe to enter an injunction was "unqualifiedly immune from suit for damages occasioned by his judicial act." 604 F.2d at 978.

The Supreme Court granted certiorari on the issue of derivative immunity, 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980), but denied certiorari on the issue of judicial immunity. 445 U.S. 943, 100 S.Ct. 1339, 63 L.Ed.2d 777 (1980).

Nevertheless, in affirming the Fifth Circuit's rejection of derivative immunity, the Court remarked:

The courts below concluded that the judicial immunity doctrine required dismissal of the § 1983 action against the judge who issued the challenged injunction, and *as the case comes to us,* the judge has been properly dismissed from the suit on immunity grounds.

—— U.S. at ——, 101 S.Ct. at 186 (emphasis added).

manifests Judge Zeller's participation in a conspiracy, then proof of the agreement could form the basis of liability whether or not he is immune from liability for subsequent judicial acts.

## B. The Clear Absence of Personal Jurisdiction

Although the Supreme Court acknowledged in *Stump v. Sparkman* that Judge Stump may have committed "grave procedural errors," 435 U.S. at 359, 98 S.Ct. at 1106, it did not explicitly consider whether he acted in the clear absence of personal jurisdiction or whether such action would be protected by judicial immunity.[10] The question appears to be one of first impression.

The district court here assumed that a court arguably having subject matter jurisdiction does not act in the "clear absence of all jurisdiction." When the Supreme Court first formulated the "clear absence" standard, however, it stated that the principle of immunity applied when there was "jurisdiction of both subject and person." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 352 (1872), 20 L.Ed. 646.[11]

■ An absence of personal jurisdiction may be said to destroy "all jurisdiction" because the requirements of subject matter and personal jurisdiction are conjunctional.[12] Both must be met before a court has authority to adjudicate the rights of parties to a dispute.

■ If a court lacks jurisdiction over a party, then it lacks "all jurisdiction" to adjudicate that party's rights, whether or not the subject matter is properly before it. *See, e. g., Kulko v. Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978) ("[i]t has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be

We do not believe that this dictum forecloses our approach to the present case. The Fifth Circuit focused only on "damages occasioned by [the judge's] judicial act." 604 F.2d at 978. It apparently did not consider, as we do here, the nonjudicial character of the prior agreement. "[A]s the case [came] to" the Supreme Court, only a judicial act had been addressed by "[t]he courts below."

In reviewing the conduct of the judge's alleged coconspirators, the *Dennis* Court noted the absence of any claim that the private parties were performing judicial acts. The Court remarked: "Not surprisingly, petitioner does not argue that judges must conspire with private parties in order that judicial duties may be properly accomplished." at ——, 101 S.Ct. at 187.

Likewise, we have little difficulty concluding that immunizing a judge's private, prior agreement to decide favorably to one party is not the way to preserve the judge's "free[dom] to act upon his own convictions." *See Bradley v. Fisher*, 80 U.S. (13 Wall.) at 347, 20 L.Ed. 646.

10. *See* Rosenberg, *supra* note 7, at 849 (procedural defects in *Stump* "were not deemed germane to the crucial jurisdictional determination").

The Court did say that "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him." *Stump v. Sparkman*, 435 U.S. at 356, 98 S.Ct. at 1104. This might imply that subject matter jurisdiction is sufficient to confer immunity, but it was

said in the apparent absence of a specific challenge to personal jurisdiction.

Further, the statement did not purport to exhaust the bases on which immunity could be overcome. It did not, for example, mention the requirement that the "challenged action" be "judicial" in character. This requirement was discussed later in the opinion. *See id.* at 360–64, 98 S.Ct. at 1106–1108. Although the language of *Stump* is broad, we cannot infer that the Court there decided an issue it did not explicitly consider.

11. Several courts have repeated this language indicating in dicta that both subject matter and personal jurisdiction are necessary to confer judicial immunity. *See, e. g., Duba v. McIntyre*, 501 F.2d 590, 592 (8th Cir. 1974), *cert. denied*, 424 U.S. 975, 96 S.Ct. 1480, 47 L.Ed.2d 745 (1976) ("the judge must have both jurisdiction over the person and subject matter if he is to be immune from suit"); *Ryan v. Scoggin*, 245 F.2d 54, 58 (10th Cir. 1957) (judge is immune for order or judgment when "court has jurisdiction of the subject matter and of the parties").

12. *See* Rosenberg, *supra* note 7, at 849–50.

"When a judge structures a controversy such that one side is necessarily precluded from presenting any evidence concerning the decision to be made, the court's actions properly can be viewed as a jurisdictional error rather than a mere error in the exercise of power." *Id.* at 849.

entered only by a court having jurisdiction over the person of the defendant") (citations omitted); *In re Wellman*, 3 Kan.App. 100, 45 P. 726, 727 (1896) (*ex parte* guardianship proceeding would be a "flagrant violation" of due process, rendering any order null and void).[13]

■ Because the limits of personal jurisdiction constrain judicial authority, acts taken in the absence of personal jurisdiction do not fall within the scope of legitimate decisionmaking that judicial immunity is designed to protect. *See Gregory v. Thompson*, 500 F.2d at 63. We conclude that a judge who acts in the clear and complete absence of personal jurisdiction loses his judicial immunity.

■ It is not sufficient that the court in fact lacked jurisdiction. Because jurisdictional issues are often difficult to resolve, judges are entitled to decide such issues without fear of reprisal should they exceed the precise limits of their authority. *Stump v. Sparkman*, 435 U.S. at 356, 98 S.Ct. at 1104. Judges of courts of general jurisdiction are not liable for judicial acts merely "in excess of their jurisdiction," even when the acts "are alleged to have been done maliciously or corruptly." *Id.* (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) at 347).

■ But when a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction, judicial immunity is lost. *See Bradley v. Fisher*, 80 U.S. (13 Wall.) at 351 ("when the want of jurisdiction is known to the judge, no excuse is permissible"); *Turner v. Raynes*, 611 F.2d 92, 95 (5th Cir. 1980) (*Stump* is consistent with the view that "a clearly inordinate exercise of unconferred jurisdiction by a judge—one so crass as to establish that he embarked on it either knowingly or recklessly—subjects him to personal liability").[14]

■ If, as alleged, Judge Zeller knew the jurisdictional allegations to be fraudulent, or if valid Kansas statutes expressly foreclosed personal jurisdiction over a proposed ward in *ex parte* proceedings for temporary guardianship, then the judge acted in the clear and complete absence of personal jurisdiction. If his acts were part of a conspiracy, he is properly held responsible for the consequences.

### C. The Need for Further Inquiry

■ Rankin's allegations, which draw some support from affidavits and answers to interrogatories assembled during discovery proceedings, raise material issues of fact that were not fully considered by the district court. Summary judgment was inappropriate.[15]

---

**13.** Indeed, when the limits of legitimate authority are wholly abandoned, the judge's act may cease to be "judicial." *See, e. g., Lopez v. Vanderwater*, 620 F.2d 1229, 1235 (7th Cir. 1980) (judge's prosecutorial acts were nonjudicial; no immunity for such acts); *Gregory v. Thompson*, 500 F.2d 59, 64 (9th Cir. 1974) (judge's use of physical force to evict person from courtroom was "simply not an act of a judicial nature"). *Cf.* Note, *Filling the Void: Judicial Power and Jurisdictional Attacks on Judgments*, 87 Yale L.J. 164, 165 (1977) (at English common law proceedings in court without jurisdiction were deemed *coram non judice*—"before one not a judge").

**14.** In *Stump*, although Indiana law did not expressly grant subject matter jurisdiction over sterilization petitions, the Court found it "more significant that there was no Indiana statute and no case law in 1971 prohibiting a circuit court, a court of general jurisdiction, from considering a petition of the type presented to

Judge Stump." 435 U.S. at 358, 98 S.Ct. at 1105.

The implication is that, had there been Indiana law expressly prohibiting the defendant judge from exercising jurisdiction, a clear absence of jurisdiction would have been established. Here the plaintiff contends that Kansas law expressly prohibited the defendant judge from exercising jurisdiction over Rankin. If this contention is correct, the judge lost his immunity.

**15.** The allegation that Judge Zeller agreed to rule favorably on the petition is supported by an affidavit from Rankin's father.

The same affidavit may also support an inference that the judge knew he lacked personal jurisdiction. In any event, Zeller's response to written interrogatories fails to resolve the issue.

Zeller recalled being told that Rankin "would be in Pottowatomie [sic] County on December 25, 1976," but "would be in the jurisdiction

Further discovery may resolve the issues, and trial is not necessarily required. But the district court must consider the possibility that Judge Zeller lost his immunity by participating in a conspiracy to violate Rankin's civil rights through a nonjudicial agreement or a judicial act in the clear and complete absence of personal jurisdiction.

The judgment of the district court dismissing all claims against Judge Zeller is reversed and remanded for further proceedings consistent with this opinion.

## II.

The § 1983 action against Howard and Trauscht was dismissed because of Judge Zeller's supposed immunity. The district court relied on our decision in *Sykes v. California*, 497 F.2d 197 (9th Cir. 1974), for the proposition that an immune state official's coconspirators are derivatively immune because they do not act under color of state law. *Id.* at 202.

In later cases, we acknowledged that the "status of derivative immunity [was] unclear in this circuit." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 n.2 (9th Cir. 1980) (per curiam) (citing *Briley v. California*, 564 F.2d 849, 858 n. 10 (9th Cir. 1977)).

■ The Supreme Court resolved the issue in *Dennis v. Sparks*, —— U.S. ——, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). The Court held that an immune judge's private coconspirators do not enjoy derivative immunity. at ——, 101 S.Ct. at 186.

The Court observed that "[i]mmunity does not change the character of the judge's action or that of his co–conspirators. Indeed, his immunity is dependent on the challenged conduct being an official act within his statutory jurisdiction, broadly construed." *Id.* at ——, 101 S.Ct. at 186 (footnote and citations omitted).

■ It follows that "[p]rivate parties who corruptly conspire with a judge in connection with such conduct are ... acting under color of state law within the meaning of § 1983." *Id.* at ——, 101 S.Ct. at 187. Even if further proceedings establish Judge Zeller's immunity, Howard and Trauscht thus may be held liable.

In any event, Rankin must prove that there was a conspiracy involving state action to deprive him of rights secured by the Constitution or federal laws. *Aldabe v. Aldabe*, 616 F.2d at 1092.

It is not sufficient that the defendants carried out a judicial order. *See Dennis v. Sparks*, —— U.S. at ——, 101 S.Ct. at 186. Rankin must demonstrate that they "reached an understanding" with Judge Zeller to violate Rankin's rights under color of the guardianship proceeding. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *see Dennis v. Sparks*, —— U.S. at ——, 101 S.Ct. at 186.

■ He has made some showing that they may have induced the judge to abandon his impartiality and fraudulently alleged Rankin's residence in Kansas to create a semblance of jurisdiction. Because these allegations and the supporting materials [16] raise material issues of fact, we reverse and remand the partial summary judgment that dismissed the § 1983 claim against Howard and Trauscht.

Reversed and remanded.

---

only temporarily." The petition for guardianship recited that Rankin *resided* in Pottawatomie County. At the very least, Judge Zeller, by his own admission, had serious reason to doubt the allegation on which his jurisdiction over Rankin was premised.

In view of the alleged nonjudicial connivance, together with questions surrounding personal jurisdiction under Kansas law and the judge's

actual knowledge, we cannot say that Judge Zeller met his initial burden of showing "that there [was] no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

**16.** *See* note 15 *supra*.