Re: BROOKS, etc.

v.

FITCH, etc., et al.

Civ. No. 79–1830.

United States District Court,
D. New Jersey.

Dec. 7, 1981.

Hersh Kozlov, Cherry Hill, N. J., for plaintiff.

Lawrence D. Lally, Montano, Summers, Mullen & Manuel, Cherry Hill, N. J., for defendant Fitch, as County Atty. and for defendant County of Dakota.

Don A. Fitch, defendant, pro se.

OPINION

ANNE E. THOMPSON, District Judge.

This civil rights action comes before the Court upon defendant Don Fitch's motion for summary judgment pursuant to *Fed.R. Civ.P.* 56.

On June 13, 1979, plaintiff Donna Brooks instituted suit under 42 U.S.C. §§ 1983, 1985 against four named defendants—Don Fitch, as County and Prosecuting Attorney for the County of Dakota, State of Nebraska; Don Fitch in his individual capacity; County of Dakota, State of Nebraska; and the State of Nebraska.[1] The complaint alleged that defendants subjected plaintiff to unwarranted and malicious prosecution. Following a letter opinion of June 24, 1980, this Court, by order dated September 18, 1980, granted summary judgment for Don Fitch in his official capacity, as well as for the County of Dakota concerning the § 1983 claim. The United States Court of Appeals for the Third Circuit dismissed plaintiff's appeal on February 23, 1981 on jurisdictional grounds. 642 F.2d 48.

In her amended complaint dated February 23, 1981, plaintiff alleged the following: Brooks worked as a legal secretary in the private law office of Fitch. Fitch was also serving as County and Prosecuting Attorney for the County of Dakota, Nebraska. Plaintiff purchased a car in December 1977. Fitch co-signed a note for plaintiff's car loan. In February 1978, plaintiff moved to New Jersey and took the car with her. In September 1978, Fitch, in his capacity as County Attorney, signed a complaint against plaintiff for violating Nebraska Statute 69–110 by removing personal property with a security interest from the county. The property at issue was the automobile plaintiff had purchased. A county judge issued a warrant for plaintiff's arrest. New Jersey police arrested plaintiff on or about September 30, 1978.

Fitch, in his capacity as County and Prosecuting Attorney, initiated extradition pro-ceedings against plaintiff on October 4, 1978. That same day, Fitch, again in his capacity as County Attorney, signed an affidavit in support of the extradition application. In that affidavit, Fitch stated that the application for requisition was not made for the purpose of collecting a debt, for the enforcement of any civil process, or to answer any private purpose. New Jersey did not extradite plaintiff.

On December 1, 1978, Fitch, in his capacity as County and Prosecuting Attorney, filed a complaint and information alleging that plaintiff embezzled $3,700.00 from Fitch in his individual capacity. Extradition was again attempted and was again unsuccessful.

Plaintiff alleges that Fitch's affidavits in support of the requisitions were false, arbitrary and capricious and that Fitch had made false statements in filing the complaint alleging embezzlement. Plaintiff alleges that: (1) Fitch's actions as County and Prosecuting Attorney deprived her of liberty without due process; (2) Fitch, as County and Prosecuting Attorney and Fitch in his individual capacity conspired to deprive plaintiff of her liberty; and (3) Fitch in his official capacity and Fitch in his individual capacity acted in concert pursuant to a conspiracy to deprive plaintiff of equal protection of the laws, of equal privileges and immunities under the laws, and of her liberty.

Fitch, in his capacity as County and Prosecuting Attorney, filed the instant motion on June 16, 1981, claiming that all defendants are entitled to immunity for both the § 1983 and the § 1985 claims. Since the Court has already granted summary judgment for Fitch in his official capacity and the County of Dakota concerning the section 1983 claim, the Court must today make three determinations: First, whether Fitch in his individual capacity is entitled to immunity from the § 1983 claim; second, whether Fitch in either capacity is entitled

---

1. By order dated and filed December 4, 1979, Judge Gerry of the United States District Court for the District of New Jersey dismissed the complaint as to the State of Nebraska and denied the motion to dismiss as to defendant Don Fitch, County and Prosecuting Attorney of the County of Dakota, and to the County of Dakota.

to immunity from the claims under § 1985; and third, whether the County of Dakota, State of Nebraska is entitled to summary judgment on the § 1985 claims. We answer all but question one in the affirmative.

## I. *The § 1983 Claim Against Fitch In His Individual Capacity*

 Prosecutors enjoy absolute immunity from damage suits under both § 1983 and § 1985 for activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1976). Such immunity, however, is not without limit. It does not apply to actions taken by prosecutors "clearly outside of their jurisdiction." *Bauers v. Heisel*, 361 F.2d 581, 590 (3d Cir. 1966) (en banc), *cert. denied*, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967). Within these limits, it is well established that this immunity extends to actions taken in the initiation of a prosecution and the presentation of the State's case. *Imbler, supra,* 424 U.S. at 431, 96 S.Ct. at 995; *Ross v. Meagan,* 638 F.2d 646, 648 (3d Cir. 1981) (per curiam). This Court's determination of whether or not Fitch's actions fall within the initiation and presentation of the State's case is a difficult one and should not be made mechanically. *Mancini v. Lester,* 630 F.2d 990, 992 (3d Cir. 1980) (per curiam). Rather, the Court will look in part to the functional nature of the prosecutorial conduct. *See Imbler, supra,* 424 U.S. at 430–31, 96 S.Ct. at 994–95.

Fitch's drawing of the complaints for plaintiff's arrest clearly falls within the ambit of the initiation of a prosecution. The events surrounding the requisitions for plaintiff's extradition from New Jersey, however, present a more difficult determination. This Court is convinced, nonetheless, that these actions also fall within the scope of the initiation and pursuit of a criminal prosecution.

The conduct in question appears to be related to Fitch's role as an advocate, the initiation and undertaking of a criminal prosecution. *See Brawer v. Horowitz,* 535 F.2d 830, 834 (3d Cir. 1976) *citing Imbler,*

*supra,* 424 U.S. at 431 n.33, 96 S.Ct. at 995 n.33. The decision to undertake a criminal prosecution and the actual initiation of the prosecution are part and parcel of the same role. One cannot initiate a prosecution in a vacuum. *Forsyth v. Kleindienst,* 599 F.2d 1203, 1215 (3d Cir. 1979). In order to prosecute a suit, the prosecuting attorney must compel the attendance of a criminal defendant. The duty of the prosecutor is to bring to trial those individuals whom he reasonably believes are guilty of the crimes for which they are charged. "So long as he acts within the scope of this duty, he is immune from civil liability." *McDonald v. State of Illinois,* 557 F.2d 596, 602 (7th Cir. 1977), *cert. denied, DeMaro v. U.S.,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 *citing Cawley v. Warren,* 216 F.2d 74 (7th Cir. 1954). The decision to prosecute had already been made. That decision should normally be clothed with absolute immunity.

To grant a prosecutor absolute immunity concerning his decision to initiate a prosecution while subjecting him to liability for securing the presence of the defendant would run contrary to the policy underlying *Imbler* and prosecutorial immunity in general. *See Forsyth, supra,* at 1215. In *Imbler* the Court granted absolute immunity to a prosecutor in a suit alleging that the prosecutor knowingly used perjured testimony. The Court noted that potential liability would divert the prosecutor's attention from his duties and would inhibit the proper functioning of the criminal justice system. *Imbler, supra,* 424 U.S. at 425–28, 96 S.Ct. at 992–94. The Court also recognized that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* at 431 n.33, 96 S.Ct. at 995 n.33. Similarly, the decisions to extradite and to issue an arrest warrant fall within the scope of absolute immunity. The filing of the affidavit in connection with the requisition is similarly integral to the initiation and pursuit of the criminal prosecution.

Except for the peculiarly personal interest of Fitch in the actions taken, courts have decided cases involving otherwise analogous circumstances, and have held the prosecuting attorney absolutely immune from damage suits. *See e.g., Macko v. Bryon,* 641 F.2d 447, 449 (6th Cir. 1981) (per curiam) (malicious indictments); *Norton v. Liddel,* 620 F.2d 1375, 1379 (10th Cir. 1980) (information signed by district attorney in malicious prosecution case); *Lee v. Willins,* 617 F.2d 320, 322 (2d Cir. 1980), *cert. denied,* 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (falsification of evidence and coercion of perjured testimony); *Henzel v. Gerstein,* 608 F.2d 654, 657 (5th Cir. 1979) (filing baseless detainer, filing an information without investigation, offering perjured testimony, suppressing exculpatory evidence); *Daniels v. Kieser,* 586 F.2d 64, 68 (7th Cir. 1978), *cert. denied,* 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979) (swearing of warrants to insure the presence of a witness at trial).

■ Plaintiff cites *Helstoski v. Goldstein,* 552 F.2d 564 (3d Cir. 1977) (per curiam) and *Coggins v. Carpenter,* 468 F.Supp. 270 (E.D. Pa.1979) for support for her contention that absolute immunity does not apply to the case at bar. While neither case is directly on point, an analysis of these two cases will serve as the starting point for the Court's discussion of why it will not grant summary judgment at this time concerning the § 1983 claim against Fitch in his individual capacity.

In *Helstoski, supra,* at 566 the Court held that, while there is question that prosecutorial immunity extends to a prosecutor's administrative and investigative functions, it certainly does not extend to a prosecutor's actions that go beyond the scope of those functions. The Court determined that the deliberate leaking of information to the press damaging to plaintiff involved actions beyond the scope of the prosecutorial function. *Id.*

In *Coggins,* plaintiff had alleged that certain defendants had acted at all times in the dual capacity of private attorney and prosecutor when they conspired to obtain a writ of seizure authorizing the removal of personal property from his home and when they caused a criminal action to be brought against him. The court concluded that to the extent that the defendants acted in their official capacity in initiating and presenting a criminal prosecution, they were immune from § 1983 liability. *Id.* at 284. There remained a question of fact, however, concerning whether they were acting within the scope of their jurisdiction when acting other than in initiating and presenting a prosecution. *Id.* Thus, in both *Helstoski* and *Coggins,* there were facts from which a trier of fact could readily infer that the prosecutors were acting clearly outside the scope of initiating and presenting a prosecution. In the instant case, as will be discussed *infra,* such facts are not readily apparent.

In *Jennings v. Shuman,* 567 F.2d 1213 (3d Cir. 1977), the Court held that plaintiff stated a § 1983 claim against a special prosecuting attorney, among others, on the theory that the special prosecutor undertook an investigation and prosecution of plaintiff for personal gain, including the extortion of money. *Id.* at 1219–21. The Court noted that in *United States ex rel. Rauch v. Deutsch,* 456 F.2d 1301 (3d Cir. 1972), it had held that where a prosecutor was alleged to have arrested and prosecuted the plaintiff as part of a scheme to extort money, he was entitled to absolute immunity. 567 F.2d at 1221. The *Jennings* Court stated that "[i]n light of *Helstoski,* we read *Rauch* as standing for the principle that a prosecutor is entitled to absolute immunity 'while performing his official duties ... as [an] officer of the court, even if, in the performance of those duties,' he is motivated by a corrupt or illegal intention." *Id.* at 1221–22 (citation omitted). Since the district court had not considered the immunity issue, the Court remanded the case to the district court in part to make that determination. *Id.* at 1222. In *Jennings, supra,* at 1222 the Court noted that, as a special prosecutor, the defendant had no authority to bring certain of the criminal charges and, therefore, may have been acting outside the scope of his jurisdiction.

In the instant case, the prosecutor's conduct at least on its face appears to differ significantly from the prosecutorial misconduct alleged in cases such as *Helstoski; Coggins; Briggs v. Goodwin,* 569 F.2d 10 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978) (prosecutor himself gave perjured testimony); or *Wilkinson v. Ellis,* 484 F.Supp. 1072 (E.D. Pa.1980) (prosecutor destroyed exculpatory evidence) in which the conduct falls clearly beyond the scope of the prosecutor's duty or did not involve the initiation and presentation of a criminal matter. Nevertheless, the events set forth in the complaint, if accurate, could indicate to a jury that Fitch was acting in a sphere which would be comparable to acting outside the scope of his jurisdiction in that his involvement was an unusually and peculiarly personal one.

In the amended complaint, plaintiff makes reference to actions undertaken by Fitch in his individual capacity as private attorney and employer. In Count Seventeen, plaintiff alleges that Fitch co-signed plaintiff's loan in his individual capacity. In Counts Thirty-Six through Forty-Seven, plaintiff asserts that Fitch in his official capacity and Fitch in his individual capacity conspired to deprive plaintiff of her legal rights. Count Forty-Six states that the owner of the funds alleged to have been embezzled was Don Fitch, in his individual capacity. In short, according to the complaint, Fitch's private law practice and a personal dispute over a security were the sources of the criminal complaint. Fitch's desire to protect his personal finances and/or to harass plaintiff served as catalyst for the events that transpired.

Subsequent to *Jennings, supra,* the Supreme Court in *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) discussed the scope of judicial immunity. Since the Third Circuit has held that "a prosecuting attorney should be granted the same immunity as is afforded members of the judiciary," *Bauers, supra,* at 589, we are persuaded that the Supreme Court's discussion of judicial immunity is instructive for the resolution of the instant matter.

In *Stump,* the Supreme Court stated that state judges enjoy absolute immunity from § 1983 liability for "judicial" acts not taken "in the 'clear absence of all jurisdiction.'" *Id.* at 357, 98 S.Ct. at 1105, *quoting Bradley v. Fisher,* 80 U.S. 335, 351, 13 Wall 335, 351, 20 L.Ed. 646 (1872). The Court stated that factors to be considered in determining whether an act is a "judicial" one include analysis of "the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge," as well as of "the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Id.* 13 Wall at 362, 20 L.Ed. 646.

The Ninth Circuit applied these standards to a § 1983 suit against a judge based upon allegations that the Kansas judge had participated in an attempt to "deprogram" him from the Unification Church. *See Rankin v. Howard,* 633 F.2d 844 (9th Cir. 1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981). The plaintiff had "alleged that the judge, prior to the initiation of the actual proceeding, had agreed with the parents to grant a guardianship petition, despite the fact that the judge knew [plaintiff] was not a Kansas resident." *Beard v. Udall,* 648 F.2d 1264, 1268 (9th Cir. 1981) (per curiam). Noting the *Stump* standards, the *Rankin* Court held that if plaintiff's allegations were proven true, "the judge would not enjoy judicial immunity because: (1) by imposing a temporary guardianship over a non-resident, the judge acted in the clear absence of jurisdiction; and (2) by agreeing in advance to grant the petition, he acted non-judicially." *Id.* The Court explained that,

> [a]lthough a party conniving with a judge to predetermine the outcome of a judicial proceeding may deal with him in his 'judicial capacity,' the other party's expectation, *i.e.,* judicial impartiality, is actively frustrated by the scheme. In any event, the agreement is not 'a function normally performed by a judge.' It is the antithesis of the 'principled and fearless decision-making' that judicial immunity exists to protect.

633 F.2d at 847 (citations omitted). The Court added that "a judge's private, prior agreement to decide in favor of one party is not a judicial act." *Id.* Thus, the Court concluded, the judge could be held liable for such nonjudicial acts. *Id.* at 847–48. The Court also determined that if the judge knew that he had no jurisdiction over the matter, he would be responsible for the consequences of his actions. *Id.* at 849.

Similarly, in *Harper v. Merckle*, 638 F.2d 848 (5th Cir. 1981), a state judge allegedly jailed his friend's former husband to help his friend. The plaintiff had entered the judge's chambers merely to drop off a support payment for his former wife. The judge appeared without judicial attire and questioned plaintiff. When plaintiff refused to be sworn in for questioning by the judge and walked out of chambers, the judge ordered plaintiff apprehended for contempt of court. The judge then held a hearing, found plaintiff in contempt of court, and jailed plaintiff for three days.

Relying upon the two-prong analysis of *Stump*, the Fifth Circuit used its own four-step analysis in determining whether the judge's actions were judicial acts clothed with absolute immunity. The Court considered whether,

(1) the precise act complained of, use of the contempt power, is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

*Id.* at 858, *citing McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972). Although the functions were judicial in nature and the events occurred in the judge's chambers, factors three and four were not satisfied, as the controversy centered around the domestic problems of one of the judge's friends and those problems were brought to the judge's attention in a social, not judicial, forum. *Id.* at 859. The Court justified its emphasis upon the third and fourth factors based on the language of *Stump* indi-

cating that consideration need be given "not only to 'the nature of the act itself' but also 'to the expectations of the parties.'" *Id., quoting Stump, supra*, 435 U.S. at 362, 98 S.Ct. at 1107. The Court concluded that the plaintiff had not entertained the expectation that judicial matters were at hand when he entered the judge's chambers on nonjudicial business. Thus, the judge's actions were not judicial acts. *Id.*

Emphasizing the narrowness of its holding, the Court held that only,

when it is beyond reasonable dispute that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears certain that no party has invoked the judicial machinery for any purpose at all, then the judge's actions do not amount to 'judicial acts.' These nonjudicial acts, to state the obvious, are not cloaked with judicial immunity from suit under § 1983.

*Id.*

Noting that the Supreme Court in *Imbler, supra*, 424 U.S. at 422–23, 96 S.Ct. at 991 had stated that prosecutorial immunity is based upon the same considerations that underlie judicial immunity, although relief is not coextensive, the Ninth Circuit in *Beard, supra* at 1271, applied the standards discussed in *Rankin, supra*, to a § 1983 suit against, *inter alia*, a County Prosecutor. The facts in *Beard* were substantially identical to those in the instant case. The defendant-County Prosecutor maintained a private law practice. Plaintiff alleged that the defendant caused a criminal charge to be filed against him in order to further a civil matter in which the prosecutor was involved, while knowing that the charges were baseless. The Court stated that a,

prosecutor who faces a conflict of interest is in as poor a position to act impartially as a judge who predetermines a judicial proceeding ... Therefore, assuming [plaintiff's] allegations against defendant are true, we conclude that [defendant] was acting beyond the scope of his au-

thority and thus does not enjoy absolute immunity.

*Id.* (footnote and citation omitted).

The Court emphasized the narrowness of its holding and stated that,

[w]e hold only that, where a prosecutor faces an actual conflict of interest, and files charges he or she knows to be baseless, the prosecutor is acting outside the scope of his or her authority and thus lacks immunity. By limiting the loss of immunity to these circumstances, we believe a prosecutor will be protected from the harassment which concerned the court in *Imbler* . . . .

*Id.* at 1271–72 (footnote omitted).

In view of the preceding discussion, this Court holds that, inasmuch as the factual allegations involve a conflict of interest, a material issue of fact exists as to whether the actions taken by Fitch are "prosecutorial" acts, or, alternatively, whether or not the acts are clearly beyond the scope of his jurisdiction. Applying the *Stump* standard, it is clear that plaintiff's "expectation" when dealing with Fitch was that she was relating to him in a personal matter and not in Fitch's capacity as prosecuting attorney. The relationship between the parties as well as their transactions concerned Fitch solely in his non-prosecutorial capacities of private attorney and employer. Such an alleged private retaliation carried out through the defendant's access to the prosecutor's office is either not a prosecutorial act within the meaning of the immunity doctrine or is an act clearly beyond the scope of the prosecutor's jurisdiction.

Under the four-pronged standard employed by the Fifth Circuit, it would appear that the incidents arose directly out of actions taken by both parties in their private capacities and did not center around a pending criminal action. Thus, that test, if applicable, would be satisfied. *Beard* is directly on point and persuasive. As the Ninth Circuit was convinced, this Court is persuaded that the policies underlying *Imbler* would not be impaired if, under the facts peculiar to this case, a county prosecutor is not clothed with absolute immunity.

This holding is a very narrow one, limited to the peculiar circumstances of this case in which the prosecutor faced a conflict of interest (e.g. prosecutor is the complainant) and is alleged to have acted purely out of a personal involvement in a civil matter.

There is no question but that Fitch was acting at all times "under color of state law." As the Supreme Court has stated, "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); *see also Jennings, supra,* at 1220. Fitch's actions fall within this standard because his official position as county prosecutor enabled him to initiate criminal proceedings against plaintiff and thereby be enabled to abuse process for personal purposes. *Id.* Thus, the Court must deny summary judgment as to the § 1983 allegation against Fitch in his individual capacity.

## II. *The § 1985 Claims Against Fitch*

 The allegations contained in the complaint are insufficient to state a cause of action under § 1985. To establish a cause of action under § 1985, plaintiff must allege a conspiracy; a purpose of depriving a person or class of persons of equal protection, or privileges and immunities under the law; an act in furtherance of the conspiracy; and either personal or property injury or deprivation of a right or privilege of citizenship. *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Nowhere in the complaint does plaintiff allege the "class based, individually discriminatory animus underlying the conspirators' action," as required by § 1985. *Novotny v. Great American Fed. S & L Assoc.,* 584 F.2d 1235, 1240 (3d Cir.) (en banc) *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1978). Therefore, the § 1985 claims must be dismissed.

Moreover, the Court is not persuaded that the "actions" described in the complaint satisfy the "conspiracy" requirement.

While an individual who conspires with one who is immune from liability is still liable under § 1985, *Dennis v. Sparks*, 449 U.S. 24, 30, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980), "conspiracy" within the meaning of § 1985 requires two or more persons conspiring to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose. *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). The Court has found no case law or other justification for plaintiff's attempt to extend the concept of conspiracy to the component parts of an individual's life, as plaintiff seeks to do. Two recent district court cases support this Court's position. In *Jagielski v. Package Mach. Co.*, 489 F.Supp. 232 (E.D.Pa.1980), the court held that a corporation cannot conspire with itself because a corporation can act only through its officers and employees. *Id.* at 233. In *McCluney v. Jos. Schlitz Brewing Co.*, 489 F.Supp. 24 (E.D.Wisc.1980), the district court rejected a state law conspiracy claim on similar grounds. *Id.* at 26.

What plaintiff appears to be arguing, although not explicitly set forth in her complaint or in her briefs, is that Fitch has had at all times a dual legal capacity, one as prosecuting attorney and one as a private attorney. In addition to alleging, as the plaintiff did in *Coggins*, that the defendant was perhaps acting more in his individual capacity than in his official capacity and was therefore not protected by prosecutorial immunity, plaintiff apparently argues that Fitch at all times was or were two persons for purposes of § 1985 liability.

Use of such a legal fiction would not be novel. For example, the fiction is extensively employed in workers' compensation law. Nevertheless, the Court rejects use of such a fiction in this particular case, as use of such a device would eviscerate the policy behind prosecutorial immunity. Taking plaintiff's argument to its logical conclusion, anytime an official who, otherwise immune from liability under *Imbler*, takes an action in his official capacity, he would be subject to liability as an individual since he conspired with himself in his official capacity. Under this theory, immunity granted to prosecutors in situations such as malicious prosecution cases would, in many instances, effectively be circumvented. For the reasons stated above, plaintiff has failed to state a cause of action under § 1985.

### III. *The § 1985 Claim Against The County Of Dakota*

██ A governmental unit may be found liable under the Civil Rights Acts for injuries inflicted upon a private individual pursuant to a governmental custom, policy, ordinance, regulation or decision. *Black v. Stephens*, 662 F.2d 181, 191 (3d Cir. 1981), citing *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611; *Landrigan v. City of Warwick*, 628 F.2d 736, 746 (2d Cir. 1980). Liability may also be triggered if the policy or custom in question is executed by those whose "acts may fairly be said to represent official policy ..." *Monell, supra*, 436 U.S. at 694, 98 S.Ct. at 2037. Counties should be treated the same as municipalities for these purposes. *See, e.g., Monell, supra*, at 664, 98 S.Ct. at 2022.

In the instant case, plaintiff fails to make the requisite allegations. The Third Circuit has required that civil rights plaintiffs be specific in their allegations. *Rotolo v. Bor. of Charleroi*, 532 F.2d 920 (3d Cir. 1976). Accordingly, summary judgment is granted for the County as to the § 1985 claims as well as to the § 1983 claims. Alternatively, summary judgment is granted as to the § 1985 claims because, as discussed above, no conspiracy existed.

Thus, summary judgment is granted as to all claims except for the § 1983 claim against Fitch in his individual capacity. The Court will enter an appropriate form of order.