Jane FONDA, Plaintiff-Appellant,

v.

L. Patrick GRAY, etc., et al.,
Defendants,

Morgan Guaranty Trust Company of New York and City National Bank,
Defendants-Appellees.

No. 79–3451.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1982.

Decided June 3, 1983.

---

John T. McTernan, Margolis, McTernan, Scope, Sacks & Epstein, Leonard I. Weinglass, Los Angeles, Cal., Mark Rosenbaum, ACLU Foundation of Southern Cal., Los Angeles, Cal., for plaintiff-appellant.

John Hill, Hill, Genson, Even, Crandall & Wade, Los Angeles, Cal., for City Nat. Bank.

James W.B. Benkard, Charles R. Morgan, Richard J. Cunningham, John F. Barry, III, Davis, Polk & Wardwell, New York City, Stanley H. Williams, Agnew, Miller & Carlson, Los Angeles, Cal., for Morgan Guar. Trust Co. of N.Y.

Before KENNEDY, ANDERSON and PREGERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Jane Fonda appeals the award of summary judgment in favor of Morgan Guaranty Trust Company and City National Bank. Ms. Fonda contends that there was a genuine issue of fact concerning the existence of a conspiracy between the defendant banks and the FBI which had the effect of violating her First and Fourth Amendment rights. We disagree.

I. BACKGROUND

On October 18, 1973, Ms. Fonda commenced this action against 20 past or then present United States Government officials, Morgan Guaranty Trust Company of New York and City National Bank of Los Angeles. The complaint alleged a wide-ranging conspiracy designed to suppress Fonda's outspoken political views, particularly those opposed to the Vietnam War and the Nixon Administration. Fonda's claims were based on the First, Fourth, Fifth and Ninth Amendments to the Constitution; 18 U.S.C. §§ 241, 2510–20; 42 U.S.C. §§ 1985(3), 1986; and 47 U.S.C. § 605.

City National moved for summary judgment in June of 1978, the district court granting the motion in November. In May of 1979, the trial judge approved a settlement between Fonda and the government defendants. That same month, Morgan Guaranty's motion for summary judgment was granted.

The respective conspiracy claims against the banks involve closely-related facts which are largely undisputed. In December 1970, Mr. Rohlf, an executive vice-president of Morgan Guaranty, received a telephone call from Mr. Malone, then head of the FBI in New York City. Malone requested that the FBI be permitted to examine Fonda's bank records. Rohlf conferred with his employees and called Malone back, stating that

a subpoena would be necessary. Malone replied that it was very important to let the FBI see these records, a matter of national security. On this, Rohlf acquiesced in·the FBI's request. He instructed an employee to allow an FBI agent to see Fonda's bank statements, but not copy or remove anything. The FBI was allowed to view the monthly statements from December 1970 through March 1972. Rohlf never spoke to the FBI again on this matter.

Apparently based on information learned from viewing the Morgan Guaranty records, in May or June of 1971 the FBI went to the Fairfax Avenue Branch of City National Bank in Los Angeles, California, to request permission to view an account held for Fonda by her secretary. The agent represented to the operations manager of the branch, Mr. Goodlett, that Fonda was the subject of a national security investigation, and that the FBI was in urgent need of the information. Based on these representations, Goodlett acquiesced and allowed the agent to view the monthly statements, apparently four times, from July 1971 to November 1971.

## II. DISCUSSION

Fonda disputes both the summary disposition of her action on the question of conspiracy and the determination that she had no constitutionally protected interest in her bank records. Our affirmance of the district court on the first issue makes it unnecessary to decide the latter.

Fonda's claims on appeal present a variation of what is commonly called a *Bivens* action. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens* the Supreme Court held that a private party who had been subjected to an unlawful search and seizure may bring a damage action against the federal agents whose unconstitutional conduct led to the injury. The rule of *Bivens* has since been applied to remedy the violation of other constitutional rights by federal authorities. *See e.g., Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment); *Carlson v.*

*Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Eighth Amendment); *see also Gillespie v. Civiletti,* 629 F.2d 637, 641–42 (9th Cir.1980). We are aware of no case, however, which has decided that private parties may be liable in a *Bivens* action. *See Writers Guild of America v. American Broadcasting Company, Inc.,* 609 F.2d 355, 360 (9th Cir.1979), *cert. denied,* 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980) (Intimates but does not decide that private parties may be liable in a *Bivens* action); *Zerilli v. Evening News Association,* 628 F.2d 217, 222–24 (D.C.Cir.1980) (Holds that facts before it make it unnecessary to decide the issue); *Benford v. American Broadcasting Companies,* 502 F.Supp. 1159, 1161–62 (D.Md.1980), *aff'd,* 661 F.2d 917, *cert. denied,* 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981).

■ We assume, without deciding, that private parties may be liable in·a *Bivens* action under principles similar to those developed under 42 U.S.C. § 1983. *See Paton v. LaPrade,* 524 F.2d 862, 871 (3d Cir.1975). Section 1983 actions may be brought to redress constitutional violations effected under color of state law. A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights. *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1156–57, 16 L.Ed.2d 267, 272 (1966); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142, 151 (1970); *Stypmann v. City and County of San Francisco,* 557 F.2d 1338, 1341–42 (9th Cir.1977); *Briley v. California,* 564 F.2d 849, 858 (9th Cir.1977); *Rankin v. Howard,* 633 F.2d 844, 850 (9th Cir.1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981). This court's recent decision in *Howerton v. Gabica,* 708 F.2d 380 (9th Cir. 1983), offers additional insight into the conduct necessary to satisfy § 1983's acting under color of law requirement. In *Howerton,* the defendants, husband and wife, were found to have acted under color of law when they directly engaged the police to aid them in evicting a tenant, the plaintiff in the action. The evidence

showed that the defendants "deliberately cloaked themselves with the authority of the state in effecting repossession of the trailer premises." Slip op. at ——. As will be discussed, there was no showing here that the banks "deliberately" participated with the government with the purpose of violating Fonda's civil rights, or that they knew of the alleged objective. Instead, the banks merely acquiesced in what appeared to them to be a proper FBI investigation. The district court correctly found that there was no genuine issue of material fact showing the banks' actions were sufficiently intertwined with that of the FBI to hold them liable under Fonda's constitutional claims.

 To prove a conspiracy between private parties and the government under § 1983, an agreement or "meeting of the minds" to violate constitutional rights must be shown. *Adickes, supra,* 398 U.S. at 152, 158, 90 S.Ct. at 1609, 26 L.Ed.2d at 151, 155; *Rankin, supra,* 633 F.2d at 850; *Baer v. Baer,* 450 F.Supp. 481, 487 (N.D.Cal.1978); *see also Hampton v. Hanrahan,* 600 F.2d 600, 620–21 (7th Cir.1979), *cert. denied in part and cert. granted in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). The mere acquiescence of the bank employees to the investigation request of the FBI to view Fonda's bank records is, without more, insufficient to prove a conspiracy. While it is not necessary to prove that each participant in a conspiracy know the exact parameters of the plan, they must at least share the general conspiratorial objective. *Hampton,* 600 F.2d at 621. The objective of the conspiracy was, in the words of the complaint, "to destroy [Fonda's] public credibility, to weaken her political significance, to cause her personal and professional injury and embarrassment and to punish her for [her] criticism" of the Vietnam War, the Nixon Administration and the U.S. Army. Clerk's Record 1, ¶ 20. Fonda did not respond to the banks' proof showing they, through their employees, knew nothing more than that the FBI was carrying on a national security investigation of Fonda. The FBI investigation may have been part of a bad faith effort to curb Fonda's anti-establishment conduct, but this, without more, will not suffice to make the banks liable. The argument that the banks had a duty to learn of the allegedly unlawful objectives of the FBI investigation is without merit. While a breach of the duty a bank owes to its depositor may give rise to contractual or tort liability, it surely is not, in and of itself, sufficient to prove the banks intended to join or to further the broad conspiratorial objective of curbing Fonda's political speech.

 Fonda failed to sufficiently rebut the defendant banks' proof of a lack of a common conspiratorial objective. Once the bank presented "evidence which, if uncontradicted, would entitle it to a directed verdict at trial, [Fed.R.Civ.P.], 56(e) shifts to [the party opposing the motion] the burden of presenting specific facts showing that such contradiction is possible." *British Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). A claim of conspiracy, being dependent on questions of intent, may not always be amenable to disposition on summary judgment. *See Adickes, supra,* 398 U.S. at 176, 90 S.Ct. at 1618, 26 L.Ed.2d at 164 (Black, J., concurring); *Fisher v. Shamburg,* 624 F.2d 156, 162 (10th Cir.1980). The mere fact that a conspiracy is alleged, however, will not defeat an adequately supported motion for summary judgment. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 668 F.2d 1014, 1055–56 (9th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982); *Mutual Fund Investors, Inc. v. Putnam Management Co.,* 553 F.2d 620, 624–25 (9th Cir.1977); *Henzel v. Gerstein,* 608 F.2d 654, 659 (5th Cir.1979). This is especially true in this case where there is actually little disagreement over the facts; what is disputed is the legal effect of those facts. But, such a dispute, effectively being a question of law, can quite properly be decided on summary judgment.

The decision of the Supreme Court in *Adickes* does not mandate a contrary result.

In *Adickes,* the Court overturned the award of summary judgment on a conspiracy claim when it concluded that the moving party did not sufficiently dispel the inference that the private party reached an agreement with the state official to deprive the petitioner of her constitutional rights. 398 U.S. at 158–160, 90 S.Ct. at 1609–1610, 26 L.Ed.2d at 155–156. Here, however, the banks did dispel any such inference. It is undisputed that the banks allowed FBI agents to monitor Fonda's bank records. But, it is also undisputed that the banks had no knowledge of any improper motive to harm plaintiff because of her outspoken political views. Simply, Fonda did not produce evidence of the existence of a "meeting of the minds" between the banks and the FBI to knowingly attempt to accomplish an alleged wrongful purpose, a necessary element of her conspiracy claim.

## III. CONCLUSION

The judgment of the district court granting City National Bank's and Morgan Guaranty Trust's motions for summary judgment is

AFFIRMED, costs to appellees.

PREGERSON, Circuit Judge, dissenting:

I dissent. A careful reading of the record causes me to conclude that there are genuine fact disputes bearing on the question of conspiratorial conduct on the part of Morgan Guaranty and City National Bank. Therefore, I do not think that it was proper to dispose of the case on summary judgment.