**Robert G. BEARD, Plaintiff-Appellant,**

v.

**Stephen G. UDALL, et al., Defendants-Appellees.**

**No. 79–3023.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1980.

Submission Withdrawn April 1, 1981.

Resubmitted April 27, 1981.

Decided June 26, 1981.

---

William F. Behrens, Phoenix, Ariz, for plaintiff-appellant.

T. Gale Dake, Johnson, Tucker, Jessen & Dake, Phoenix, Ariz., for defendants-appellees.

Before FARRIS, PREGERSON, and NELSON, Circuit Judges.

PER CURIAM.

Beard appeals from the district court's summary judgment against him in a civil rights suit brought under 42 U.S.C. § 1983. We affirm in part, reverse in part, and remand.

## I. *FACTS*

On February 26, 1974 a divorce decree was entered in Maricopa County terminating the marriage of Roger and Stephanie Beard. As part of the decree, Roger Beard (Beard) was awarded custody of his two minor sons. Stephanie Beard subsequently moved to Apache County, where she married Bill Crabtree and began working as a secretary for the County Attorney, Stephen Udall (Udall).

On July 8, 1977 Beard brought his two sons from his home in Maricopa County to visit their mother (Crabtree) in Apache County. While the boys were with their mother, Udall, representing Crabtree in his private capacity, petitioned Judge Greer of the Apache County Court to modify the original divorce decree and award custody of the children to Crabtree. Judge Greer set a hearing on an order to show cause (OSC) and entered a temporary restraining order (TRO) prohibiting Beard from removing the children from Apache County. The hearing was set for July 29, the day the TRO was due to expire.

Beard filed a motion to dismiss on the ground that the Apache County Court did not have jurisdiction, a motion for an immediate termination of the TRO, and a motion for a change of venue. Judge Greer was apparently hearing another case on July 29 and, therefore, could not hold a hearing on the Beard matter until August 1. On August 1, Judge Greer heard arguments relating to Beard's motions and delayed the hearing on the OSC. Judge Greer's minute entry of August 1 made no mention of an extension of the TRO.

Beard returned to Apache County with his present wife and her sister on August 10 to pick up his sons. Apparently without informing anyone, Beard took the children from the house where they were staying, placed them in his car, and drove back to his home in Maricopa County.

When it was discovered that the children were no longer in the county, a complaint was sworn out and signed by Deputy Sheriff Gilchrist charging Beard and his companions with various felonies and misdemeanors, including kidnapping.[1] Warrants were issued for the arrest of Beard and his companions by a justice of the peace, and bond was set at $60,000.

Sheriff Lee of Apache County sent a telex to the Maricopa County sheriff's office regarding the arrest warrants. A Maricopa County police officer was sent to Beard's home and arrested Beard as he returned with his children from Apache County. Beard presented the custody decree to the officer in an attempt to convince the officer the charges were unjustified. The officer was informed by his headquarters that he should nevertheless arrest Beard because the Maricopa County police had contacted Udall who had advised them that the arrest warrants were valid.

Beard's attorney then contacted Judge McDonald of the Maricopa County Court. In his affidavit, Judge McDonald states that his suspicions were sufficiently aroused by the circumstances surrounding the arrests, specifically the apparent conflict of interest facing Udall, that he proceeded to investigate the matter. Judge McDonald telephoned Udall, who stated that he was both Crabtree's private attorney and the County Attorney. Udall further stated that he had caused the charges to be brought against Beard. He justified the kidnapping charge on the ground that there was a valid TRO in effect which prohibited Beard from removing the children from the county. Udall allegedly also sought to mislead Judge McDonald as to the whereabouts of Judge Greer.

Judge McDonald finally contacted Judge Greer at his home. According to Judge McDonald, Judge Greer seemed to know what had transpired that day. Judge Greer informed Judge McDonald that the TRO was in effect, that he wanted the children returned, and that Beard would have to answer to criminal charges that had been filed against him. On the basis of his conversations with Udall and Judge Greer, Judge McDonald ordered that the bond set for Beard and his companions be reduced and that they be released.

Five days after the criminal charges were brought, Judge Greer made a minute entry amending his minute entry of August 1. In the amended minute entry, he indicated that all Beard's motions, including the motion to terminate the TRO, were denied. Judge Greer further set a hearing date, for later in the month before a different judge, on the original custody modification petition.

Beard brought a special action proceeding before the Arizona Court of Appeals, appealing the denial of his motion to have the custody modification proceeding in Apache County dismissed for lack of jurisdiction. The court of appeals held that Judge Greer did not have jurisdiction to entertain the custody modification petition because jurisdiction to modify a custody decree lies exclusively in the courts of the county that granted the decree. *Beard v. Greer*, 116 Ariz. 536, 570 P.2d 223 (Ct.App. 1977).

Udall turned the criminal charges over to the State Attorney General. On September 21, 1977 the Attorney General informed Udall that he would not prosecute the charges brought against Beard. Nevertheless, on October 17, Udall wrote to Beard's attorney that the Beard matter was in the hands of the Attorney General and thus Udall could not dismiss the charges.

Beard, his wife, and his wife's sister brought suit under 42 U.S.C. § 1983, alleg-

---

1. The other charges included conspiracy to kidnap, carrying a deadly weapon with intent to assault, criminal failure to provide support, criminal trespassing and criminal disobedience of a court order.

ing that Udall, Judge Greer, and Sheriff Lee were responsible for the instigation, prosecution, and continuation of proceedings against Beard and his companions and that these wrongful acts caused them to be deprived of their federally protected rights. Plaintiffs sought compensatory damages, punitive damages, and attorney's fees from all three defendants. The district court awarded summary judgment to the defendants on the ground that they enjoyed immunity for their alleged official misconduct. Beard appeals from the district court decision.[2]

## II. *JUDGE GREER*

This court recently discussed the scope of the judicial immunity doctrine in cases brought under section 1983. *See Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981). Rankin brought a section 1983 action against his parents, a Kansas judge, and others who had participated in an attempt to "deprogram" him from the Unification Church. Rankin alleged that the judge, prior to the initiation of the actual proceeding, had agreed with the parents to grant a guardianship petition, despite the fact that the judge knew Rankin was not a Kansas resident. The district court granted summary judgment against Rankin on the ground that the judge enjoyed judicial immunity for his acts.

This court, relying on the Supreme Court's decision in *Stump v. Sparkman*, 435

2. The other two original plaintiffs did not file a timely appeal; thus only Beard is before the court. A subsequent motion to amend the notice of appeal to include the other plaintiffs was denied by this court on April 5, 1979.

3. In *Stump* a section 1983 action had been brought against an Indiana judge who had approved a sterilization petition submitted by the mother of a slightly retarded daughter. The court held that the judge would not be deprived of his judicial immunity because he had not acted in the *clear* absence of jurisdiction nor had he committed a non-judicial act. 435 U.S. at 357–360, 98 S.Ct. at 1105–07. *Stump* has been the subject of much commentary. *See, e. g.*, Nagel, *Judicial Immunity and Sovereignty*, 6 Hastings Const.L.Q. 237, (1978); Rosenberg,

U.S. 439, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978),[3] held that a judge does not enjoy judicial immunity if the judge's actions were either non-judicial or taken in clear absence of all jurisdiction. *Rankin*, 633 F.2d at 850. *See also Lopez v. Vanderwater*, 620 F.2d 1229, 1233 (7th Cir.), *cert. dismissed*, —— U.S. ——, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980). We then held that if Rankin's allegations were true, the judge would not enjoy judicial immunity because: (1) by imposing a temporary guardianship over a non-resident, the judge acted in the clear absence of jurisdiction; and (2) by agreeing in advance to grant the petition, he acted non-judicially. *Rankin, supra.* We therefore reversed the district court's summary judgment and remanded for further consideration. *Id.*

In the instant case Beard's complaint can be construed to allege four wrongful acts by Judge Greer: (1) that Judge Greer acted in the clear absence of jurisdiction when he considered the custody modification proceeding and entered the TRO; (2) that Judge Greer acted in the absence of jurisdiction by failing to follow the procedures established by the applicable Arizona statutes and regulations[4]; (3) that Judge Greer conspired with Udall to enter the TRO; and (4) that Judge Greer conspired with Udall and Sheriff Lee to jail Beard. The first two alleged wrongs raise the question whether Judge Greer acted in the clear absence of jurisdiction, and the last two require a determination whether Judge Greer acted non-judicially.

*Stump v. Sparkman: The Doctrine of Judicial Impunity*, 64 Va.L.Rev. 833 (1978); Note, *Civil Rights Suits Against State and Local Governmental Entities and Officials: Rights of Action, Immunities and Federalism*, 53 So.Cal.L.Rev. 945, 1026–37 (1980); and Casenote, 47 U.Mo. Kan.City L.Rev. 81 (1978).

4. Beard alleges that Judge Greer violated Ariz. Rev.Stat. § 25–339 (West 1976) (amended 1980), which requires notice and hearing before an OSC on a Petition for Modification can be issued, and A.R.Civ.P. 65(d), which requires that a TRO issued without notice "define the injury and state why it is irreparable and why the order was issued without notice."

## A. Acting in the Clear Absence of Jurisdiction

### 1. Entering the TRO.

█ Beard contends that the decision of the Arizona Court of Appeals indicates that Judge Greer acted in the absence of jurisdiction and thus does not enjoy immunity for his actions in the instant case. Although the Arizona Court of Appeals ultimately concluded that Judge Greer's construction of the statute was incorrect, the appeals court recognized that Judge Greer's construction of the statute, recently enacted, seemed plausible at first glance. *Beard v. Greer*, 116 Ariz. 536, 538, 570 P.2d 223, 225 (Ct.App. 1977). The Arizona Court of Appeals's decision was the first to interpret the new statute. The appeals court held that despite recent changes in the language, the Arizona legislature did not intend to change existing law to permit a court that had not entered the divorce decree to entertain a custody modification petition. *Id.* at 539, 570 P.2d at 226. Based on this record, we are unable to say that Judge Greer acted in clear absence of all jurisdiction.

### 2. The Procedural Irregularities

█ The fact that a judge commits "grave procedural errors" is not sufficient to deprive a judge of absolute immunity. *Stump*, 435 U.S. at 359, 98 S.Ct. at 1106. Thus, even if Beard's allegations that Judge Greer failed to adhere to the procedural rules established by the Arizona statutes are true, judicial immunity precludes Beard from recovering for this alleged wrongful act. *See O'Neil v. City of Lake Oswego*, 642 F.2d 367 at 370 (9th Cir. 1981).

## B. Committing a Non-Judicial Act.

In *Rankin* this court, quoting from the Supreme Court's opinion in *Stump*, restated the two factors that should be considered in determining whether an act is "judicial":

'the nature of the act itself, *i. e.*, whether it is a function normally performed by a judge, and ... the expectations of the parties, *i. e.*, whether they dealt with the judge in his judicial capacity.' 435 U.S. at 362, 98 S.Ct. at 1107.

633 F.2d at 847.[5] We then concluded that a "prior agreement to decide in favor of one party is not a judicial act." *Id.*[6] This conclusion followed from the fact that a party expects judicial impartiality in dealing with a judge; thus, if a judge connives with one of the parties to predetermine the outcome of a judicial proceeding, the other parties' expectations are frustrated. *Id.* Moreover, the court noted, an agreement by a judge to predetermine the outcome of a proceeding is "not a function normally performed by a judge." *Id.* Even though the judge's disposition of the proceeding remains a judicial act, under *Rankin* the prior agreement is deemed the essential cause of any deprivation of federally protected rights. Accordingly, the judge may be liable for damages due to the deprivation. *Id.* at 847–48 & n.9.

This case must be decided under summary judgment standards. When a disgruntled litigant makes a charge that a judge and another party entered into a prior, private agreement regarding the outcome of a case, we take into account the ease with which such a charge can be made. We also keep in mind that hailing a judge into court

---

5. The court also indicated that the underlying purpose of the judicial immunity doctrine—principled and fearless decisionmaking—is a factor that should be considered in determining whether a particular act is judicial. *Rankin*, 633 F.2d at 847 (citing *Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974)).

6. The time and place of the alleged non-judicial act will sometimes, but not always, be relevant. In *Stump* the court held that the judge's approval of an *ex parte* sterilization petition was a judicial act. *Rankin*, on the other hand, involved an allegation of an agreement as to the outcome of an *ex parte* guardianship petition prior to its submission. The fact that *Stump* involved only allegations of wrongful acts taking place in the courtroom, while *Rankin* involved alleged activity outside the courtroom is one ground for distinguishing the results in the two cases. However, even activity that takes place in a courtroom can sometimes be considered non-judicial. *See, e. g., Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974) (judge does not enjoy immunity for assault committed in courtroom). *See also Zarcone v. Perry*, 572 F.2d 52 (2nd Cir. 1978).

to answer such charges severely chills "principled and fearless decision-making." *See Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967) (A judge "should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption."). In opposing a motion by the judge-defendant for summary judgment, a plaintiff making such charges may not rest upon the allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue of fact for trial. With the above discussion in mind we proceed to consider whether the particular acts complained of by Beard were in fact "judicial" and whether Beard presented specific facts showing the existence of genuine issues of fact for trial.

### 1. *Improperly Entering the TRO.*

 Beard has alleged that Judge Greer acted improperly in entering the TRO. The only basis for awarding damages for entry of the TRO in the present case is the existence of an alleged prior agreement between Judge Greer and Prosecutor Udall that a TRO would be entered. There is no liability without such an agreement; the entry of the TRO alone is a judicial act for which Judge Greer is not liable.

Although it lacks an express allegation, Beard's complaint, liberally construed, appears to raise by implication the issue of the existence of such an agreement. Beard has not, however, supported the implication with specific facts; therefore, Judge Greer would have judicial immunity for his action even if his entry of the TRO was done maliciously or in bad faith. *Stump*, 435 U.S. at 356, 98 S.Ct. at 1104–05, *quoting Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872); *O'Neil v. City of Lake Oswego*, at 371.

### 2. *Conspiring to Jail Beard.*

 A judge can be liable for participating in a conspiracy if the acts indicating participation were taken by the judge "otherwise than in his judicial role." *Slavin v. Curry*, 574 F.2d 1256, 1264 (5th Cir.), *modified,* 583 F.2d 779 (1978). Beard specifically alleged that Judge Greer conspired to incarcerate him. Judge Greer's participation in the conspiracy is evidenced by his statement to Judge McDonald that there was a TRO in effect when Judge Greer allegedly knew it had expired.[7] This statement was made only after Judge Greer had already discussed with Udall and Sheriff Lee the events relating to the charges against Beard. Judge McDonald's affidavit testimony sufficiently raises a genuine issue of material fact regarding the existence of an agreement and Beard, therefore, has successfully withstood Judge Greer's motion for summary judgment. If, at trial after remand, Beard proves that there was a prior, private agreement between Judge Greer and Udall to mislead Judge McDonald, then Judge Greer would not enjoy immunity because, under *Rankin*, the agreement would not have been a judicial act. Judge Greer would then be subject to liability for the damage suffered by Beard as a result of the conspiracy if Beard shows that the conspiracy violated rights protected by section 1983.

### III. *COUNTY ATTORNEY UDALL*

The leading case on the scope of prosecutorial immunity is *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In *Imbler* the complaint alleged the prosecutor had knowingly introduced perjured testimony. The court held that a prosecutor is absolutely immune for his quasi-judicial activity. *Id.* at 430–431, 96 S.Ct. at 994–995. The court indicated that the immunity of a prosecutor is based upon the

---

7. Other evidence of Judge Greer's participation in the conspiracy is his August 15 amendment of the August 1 minute entry. This was allegedly done to create the impression that there had been a TRO in effect when Beard had picked up his sons. Conferring with another judge and making official entries are typical judicial functions. *Compare Slavin*, 574 F.2d at 1263. However, if Judge Greer acted pursuant to a prior agreement with Udall, then Judge Greer has no immunity for the consequences of his acts because those consequences resulted from the non-judicial conspiracy.

same considerations that underlie the immunity of a judge. *Id.* at 422–23, 96 S.Ct. at 991–992. Nevertheless, a prosecutor's immunity is not necessarily co-extensive with that of a judge. *See Supreme Court of Virginia v. Consumer Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) (party can obtain injunctive and declaratory relief against prosecutor; Court leaves open question whether such relief can be obtained against judge).

■ Absolute prosecutorial immunity now exists if the prosecutor was acting within the scope of his or her authority and the prosecutor was acting in a quasi-judicial capacity.[8] *See e. g., Briggs v. Goodwin*, 569 F.2d 10 (D.C. Cir. 1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978). We believe that under the circumstances of the instant case Udall may not have been acting within the scope of his authority.

We begin by recognizing that in certain outlying areas it may be necessary for the county attorney to maintain a private practice. In such situations a county attorney's official actions may raise questions regarding conflict of interest. Nevertheless, in most situations, a county attorney will not be deprived of his or her absolute immunity for performing official duties.

■ Udall's alleged activities, unlike those of the prosecutor in *Imbler*, were performed to further a private purpose. His conduct, therefore, went beyond merely performing his official duties. Beard alleges that Udall caused the criminal charge to be filed in order to further the civil suit Udall had filed on Crabtree's behalf, and that he filed the criminal charges while knowing the charges were baseless. A prosecutor who faces a conflict of interest is in as poor a position to act impartially as a judge who predetermines a judicial proceeding. *See Rankin, supra.* Therefore, assuming Beard's allegations against Udall are true,[9] we conclude that Udall was acting beyond the scope of his authority and thus does not enjoy absolute immunity.

■ We wish to emphasize that our holding is a narrow one. We hold only that, where a prosecutor faces an actual conflict of interest, and files charges he or she knows to be baseless, the prosecutor is acting outside the scope of his or her authority and thus lacks immunity.[10] By limiting the

---

**8.** In *Imbler* the court left open the question whether a prosecutor enjoys absolute immunity when acting in an administrative or investigative capacity. *Imbler*, 424 U.S. at 430–31, 96 S.Ct. at 994–995. *See Butz v. Economou*, 438 U.S. 478, 511 n.37, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). Since *Imbler*, all the courts of appeals that have considered the question have held that a prosecutor enjoys only qualified immunity for actions taken in an administrative or investigative capacity. *See Briggs, supra; Lee v. Willins*, 617 F.2d 320 (2nd Cir. 1980); *Forsyth v. Kleindienst*, 599 F.2d 1203 (3rd Cir. 1979); *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir. 1979), *rev'd on other grounds* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Jacobson v. Rose*, 592 F.2d 515, 524 (9th Cir. 1978), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979). Because we conclude that Udall may have been acting without the scope of his authority, we need not consider whether any of his activities can also be classified as administrative.

**9.** Udall contends that his deputy was assigned to handle the Beard case because Udall recognized that he faced a conflict of interest. However, this contention is seemingly inconsistent with Udall's statements to Judge McDonald in their telephone conversations on the day Beard was arrested. Furthermore, Beard alleges that Udall conspired with Judge Greer to mislead Judge McDonald. The question of Udall's actual participation in the initiation of the charge against Beard and his involvement in a conspiracy to mislead Judge McDonald are issues which must be decided by the trier of fact.

If the trier of fact concludes that Udall did participate in the filing of the charges against Beard, it must then determine whether Udall knew the charges were baseless when filed. Udall knew that Beard had legal custody of his two sons. Thus, if Beard can prove that Udall knew there was no TRO in effect when Beard picked up his sons, there would have been no basis for filing the kidnapping charge and no basis for the statements made by both Udall and Judge Greer to Judge McDonald.

**10.** *Cf. Jenning v. Shuman*, 567 F.2d 1213, 1222–23 (3d Cir. 1977) (court remanded to district court for determination of whether special prosecutor and district attorney were performing "official" duties when they filed charges against plaintiff, where plaintiff alleged charges were filed as part of extortion plan).

loss of immunity to these circumstances, we believe a prosecutor will be protected from the harassment which concerned the court in *Imbler*, 424 U.S. at 423, 96 S.Ct. at 992.

We remand the case to the district court for a determination of Udall's liability. On remand, the trier of fact should determine whether Udall actually participated in the filing of the criminal charges and whether Udall knew the charges were baseless when they were filed. *See* note 9, *supra*.

## IV. *SHERIFF LEE*

 A sheriff enjoys only a qualified immunity from liability for damages under section 1983. *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). Thus, if Sheriff Lee was involved in the investigation and arrest of Beard, he may be liable, unless his actions were taken in good faith and with probable cause. *Id.* Although Sheriff Lee disputes his actual involvement in the investigation and contends he acted in good faith, these are issues of fact which must be decided after a trial on the merits. We must, therefore, reverse and remand to the district court.

## V. *CONCLUSION*

The judgment that Judge Greer is immune from damages flowing from the initial entry of the TRO is affirmed. The grant of summary judgment to Judge Greer on the claim that he conspired to arrest Beard is reversed. The grants of summary judgment to Udall and Sheriff Lee are also reversed. The case is remanded to the district court for proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.